MALAMA MAHA'ULEPU, Intervenor–Appellant, v. LAND USE COMMISSION, STATE OF HAWAII, PLANNING COMMISSION, COUNTY OF KAUAI, AINAKO RESORT ASSOCIATES, GROVE FARM PROPERTIES, INC., and PLANNING DEPARTMENT, COUNTY OF KAUAI, Defendants–Appellees

NO. 13764

(CIV. NO. 88–0211)

APRIL 9, 1990

LUM, C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND RETIRED JUSTICE NAKAMURA, IN PLACE OF MOON, J., RECUSED

OPINION OF THE COURT BY LUM, C.J.

Appellant Malama Maha'ulepu (Malama), an unincorporated association, challenges a Land Use Commission decision affirming the grant of a special use permit for the construction of a golf course on prime agricultural land in Poipu, Kauai. The question raised in this appeal is whether the provisions of Chapter 205,

Hawaii Revised Statutes (HRS) prohibit the county planning commissions and the State Land Use Commission from issuing special use permits for golf courses on prime agricultural lands classified by the Land Study Bureau as Productivity Rating Class A or B. We hold that Chapter 205 does provide the authority for such permits, and we affirm.

I.

In April 1988, Appellees Ainako Resort Associates and Grove Farm Properties (Ainako) petitioned the Kauai County Planning Commission (KPC) for a special use permit to construct a 210–acre golf course on land zoned for agricultural use and classified by the Land Study Bureau's Detailed Land Classification as Overall (Master) Productivity Rating Class B.[1]

After the KPC announced public hearings, Malama petitioned to intervene in opposition to the permit. The petition stated that members of Malama used the land and adjacent coastal areas. Malama alleged that construction of the golf course would have negative environmental, ecological and aesthetic consequences. The KPC granted the petition to intervene on May 25, 1988.

The KPC held several public hearings on the special permit application between May and August of 1988, and approved the special use permit on August 11, 1988.

HRS § 205–6 (1985) and Hawaii State Land Use Commission (LUC) Rule 15–15–95 require automatic review by the LUC of a special permit granted for a parcel of land greater than 15 acres. The LUC reviews the special permit based upon the record

---

[1] The overall productivity rating utilized in the statutory land use scheme for determining permissible uses in agricultural districts, *see* HRS § 205–4.5 (1976 & Supp. 1981), evaluates the soil's general productive capacity in agricultural use, the rating of "A" denoting the highest level of productivity and "E" the lowest. *Detailed Land Classification—Island of Oahu*, Land Study Bureau Bulletin No. 11 at 19–20 (1972).

developed in the planning commission proceeding and upon the memoranda and arguments before the LUC. Pursuant to these provisions, the KPC forwarded the record to the LUC.[2]

The LUC permitted Malama to appear as a party to oppose the permit. The LUC heard oral arguments on the permit on September 29, 1988. The commission approved the permit, issuing its Findings of Fact, Conclusions of Law, Decision and Order on November 23, 1988.

Malama filed Notice of Appeal to the Fifth Circuit on December 1, 1988. The court affirmed the issuance of the special permit by written order filed March 16, 1989, and this appeal followed.

## II.

Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise, *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw. App. 633, 639, 675 P.2d 784, 789 (1983), and review of special permit approvals is limited to discerning whether the administrative agencies committed errors of law or abused their discretion in granting the permit. *Neighborhood Bd. No. 24 (Waianae Coast) v. Land Use Comm'n*, 64 Haw. 265, 639 P.2d 1097 (1982). However, by arguing that the Kauai County Planning Commission and the LUC

_____

[2] HRS § 205–6 provides in pertinent part:

> Special permits for land the area of which is greater than fifteen acres shall be subject to approval by the land use commission . . . .

> A copy of the decision together with the complete record of the proceeding before the county planning commission on all special permit requests involving a land area greater than fifteen acres shall be transmitted to the land use commission within sixty days after the decision is rendered. Within forty–five days after receipt of the complete record from the county planning commission, the land use commission shall act to approve, approve with modification, or deny the petition.

exceeded the scope of their authority under HRS Chapter 205, Malama raises an issue of statutory interpretation. Conclusions of law by an administrative agency that do not involve agency rules are reviewed *de novo*. *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 317, 322, 713 P.2d 943, 950 (1986).

The LUC's substantive authority to grant a special permit derives solely from the provisions of HRS Chapter 205 governing land use. The LUC may exercise only those powers granted to it by statute, *Stop H-3 Association v. State Department of Transportation*, 68 Haw. 154, 706 P.2d 446 (1985), and may not grant a special permit unless the proposed use is permissible under Chapter 205. *Neighborhood Bd. No. 24 (Waianae Coast) v. State Land Use Comm'n*, 64 Haw. at 270–71, 639 P.2d at 1102.

In this case, the authority to issue a special permit to Appellee Ainako derived from HRS §§ 205–4.5 and 205–6 (1985). Section 205–4.5(a) provides that golf courses are not a permitted use on A and B rated agricultural lands.[3] Section 205–4.5(b) nonetheless allows those uses for which special permits may be obtained under § 205–6. Section 205–6 vests in the planning commissions the authority to issue special permits for uses that, while not otherwise

---

[3] HRS §§ 205–2 and 205–4.5 enumerate permissible uses within the agricultural district. HRS § 205–2 outlines permissible uses on lands classified by the Land Study Bureau's Detailed Land Classification as Overall Productivity Rating Class C, D, E or U, while lands classified A or B are restricted to the uses described in HRS § 205–4.5. *See* HRS §§ 205–4.5(c) and 205–5 (1976).

HRS 205–4.5(a) provides in part:

**Permissible uses within the agricultural districts.** (a) Within the agricultural district all lands with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B shall be restricted to the following permitted uses:

. . . .

(6) Public and private open area types of recreational uses ... but not including dragstrips, airports, drive–in theaters, golf courses, golf driving ranges, country clubs, and overnight camps[.]

permitted within agricultural districts, are nonetheless "unusual and reasonable" uses that promote the effectiveness and objectives of Chapter 205. *Neighborhood Bd. No. 24 (Waianae Coast) v. Land Use Comm'n*, 64 Haw. at 269–70, 639 P.2d at 1101. The Planning Commission found that the proposed golf course use was an unusual and reasonable use of the land, and Malama does not challenge that finding on appeal.

Malama contends, however, that the legislature impliedly repealed any such authority under §§ 205–4.5(b) and 205–6 by passing Act 298 in 1985, which amended HRS § 205–2 to read as follows:

> Agricultural districts shall include activities or uses as characterized by . . . open area recreational facilities, *including golf courses and golf driving ranges, provided that they are not located within agricultural district lands with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B*. (Emphasis added to illustrate amendatory language.)

Malama argues that the plain language of this amendment is prohibitory, and so must be read to deny the local and state planning commissions authority to grant special permits for golf courses on A and B rated lands.

Interpreting the amendment to § 205–2 as a proscription against special permits for courses on A and B rated lands would bring § 205–2 into conflict with § 205–4.5(b), which allows such permits under § 205–6 so long as they are "unusual and reasonable." Amendatory language that merely reiterates the language of a pre–existing parallel provision must ordinarily be read in accord with the interpretation given that provision, and not in conflict with it. Further, the general rule is that "repeals by implication are not favored and that if effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is intended to

remain in force and that the later statute did not repeal it." *State v. Gustafson*, 54 Haw. 519, 521, 511 P.2d 161, 162 (1973). In order to determine the intended relationship between these statutes, we look to their legislative history.

Before 1976, prime agricultural lands rated A and B by the Land Study Bureau were not distinguished from other less productive lands rated C, D, E, and U. HRS § 205-2 (1976), which outlined appropriate uses in agricultural districts, simply provided that "open area recreation facilities" were a compatible permitted use in agricultural districts. In 1976, concern arose that prime agricultural lands were being subdivided for residential use contrary to the design of the zoning plan. The legislature responded by adding HRS § 205-4.5 to restrict prime A and B agricultural lands to certain enumerated uses. Conf. Comm. Rep. No. 2-76 on H.B. No. 3262-76, in 1976 Senate Journal, at 836. HRS § 205-4.5(b), as discussed above, allowed golf courses as a permissible use on A and B soils provided the requirements for a special permit under § 205-6 were met. Relying on the special permit provision of § 205-6, the LUC has granted special use permits for courses on B soils on several occasions since 1975. Malama acknowledges that this has been the practice of the LUC since the passage of § 205-4.5.

Act 298, which amended § 205-2, was adopted in 1985 in response to increasing public demand for golf course development. As originally drafted, the bill proposed to amend § 205-4.5 to permit golf courses on A and B rated lands. While the House committee agreed with the purpose of the bill, it recommended that A and B lands not be used. Stand. Comm. Rep. No. 442, in 1985 House Journal, at 1195. Accordingly, the bill was amended to permit golf courses under the more general provisions of § 205-2, while reiterating their non-permitted status on A and B lands.

The legislative record does not yield clear evidence of an implied repeal of authority. We believe that if the legislature had intended absolute protection from golf course uses for A and B

rated agricultural lands, it would have done so unequivocally by prohibiting the issuance of permits for golf courses under the special permit provisions of § 205–4.5(b), or by employing clearly prohibitory language in Act 298. Because the amendment of § 205–2 merely reiterated the provisions of § 205–4.5, which provided authority for special permits for golf course uses on A and B rated lands, § 205–2 cannot be construed as an outright prohibition on such permits. Consequently, the Kauai Planning Commission and the LUC possessed authority under HRS §§ 205–4.5(b) and 205–6 to issue the special use permit to Appellee Ainako.

### III.

Malama also contends that it was denied a full and fair hearing before the Kauai Planning Commission. First, Malama argues that the KPC did not comply with its own procedural rules governing the filing of stipulations and proposed decisions. We cannot agree. We grant deference in reviewing an administrative agency's interpretation of its own rules unless a decision is clearly erroneous or inconsistent with the underlying legislative purpose, *Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984), and the KPC's reading and application of its rules in this case were not so.

Second, Malama contends that it was denied the opportunity to present relevant evidence when the KPC denied Malama's motion for discovery of documents relating to the Hyatt Regency located near the proposed golf course, including financial records and statements, feasibility studies, and plans and projections for the hotel. Malama made the motion after the managing partner of Ainako testified that the golf course would be essential to ensure the viability and competitiveness of the hotel. Upon a review of the record, we cannot conclude that the KPC abused its discretion in denying discovery of the issue.

Affirmed.

*Stephen Levine* for Appellant Malama Maha'Ulepu.

*David L. Callies* (*Dennis M. Lombardi* and *David Allan Feller*, of counsel, Case & Lynch; and *Bruce L. Lamon* and *Carol A. Eblen*, of counsel, Goodsill, Anderson, Quinn & Stifel, with him on the brief) for Appellees Ainako Resort Associates and Grove Farm Properties, Inc.
On the briefs:

*Benjamin M. Matsubara* and *Edsel M. Yamada*, of counsel, Matsubara, Lee & Kotake, for Appellee State Land Use Commission.

*Michael J. Belles*, County Attorney, and *Peter M. Wilkens*, Deputy County Attorney, and *Max W. J. Graham, Jr.*, Special Counsel, and *Lorna A. Nishimitsu*, Special Counsel, for Appellees Planning Commission and Planning Department.