**HALE O KAULA CHURCH, et al., Plaintiffs,**

v.

**THE MAUI PLANNING COMMISSION; et al., Defendants.**

**and**

**The United States of America, Intervenor.**

No. CIV. 01–00615 SPK/KSC.

United States District Court, D. Hawai'i.

Oct. 24, 2002.

Roman Storzer, Anthony Picarello, Derek L. Guabatz, Becket Fund for Religious Liberty, Washington, DC, Charles Hurd, Hurd & Luria, Honolulu, HI, for Plaintiffs.

James B. Takeyesu, Victoria J. Takeyesu, Madelyn S. D'enbeau, Dept. of Corp. Counsel, County of Maui, Wailuku, HI, for Defendants.

John P. Dellera, Dept. of Atty. Gen., Honolulu, HI, for State of Hawaii.

Adam Szubin, U.S. Dept. of justice, Washington, DC, for Intervenor.

*ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL; AND (2) ADDRESSING OTHER CONSTITUTIONAL ISSUES*

SAMUEL P. KING, Senior District Judge.

## INTRODUCTION

In this lawsuit, Hale O Kaula Church and its Elders Daryl Arita, Thomas Foster, David Jenkins and Robert Poulson ("Plaintiffs") have alleged violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. ("RLUIPA") following the Maui County Planning Commission's August 2001 denial of a Special Use Permit sought under Haw.Rev.Stat. § 205–6. Based upon the same denial, Plaintiffs also make claims for deprivations of federal civil rights (freedom of religion, speech, assembly, equal protection, due process) under 42 U.S.C. § 1983, as well as for conspiracy under 42 U.S.C. § 1985. The operative complaint also contains similar state law claims under the Hawaii Constitution as well as Counts for a violation of the Hawaii Administrative Procedure Act (Count XV)

and for violation of the Maui County Code ch. 19.30A (Count XVI).

The primary Defendants are the Maui Planning Commission; the County of Maui; the individual members of the Maui Planning Commission (Samuel Kalalau III, Jeremy F. Kozuki, Bernice Lu, Star Medeiros, Susan Moikeha, Herman Nascimento, Randy Piltz, Joseph Pontanilla, and Mona Richardson) in their individual and official capacities; John E. Min, the Director of the Maui Department of Planning, in his individual and official capacities; James Apana, Jr., in his official capacity as Mayor of Maui County; and Judith Neustadter–Fuqua, a Hearing Officer for the Maui Planning Commission, in her individual and official capacities.[1] The Court refers to these Defendants collectively as the "Maui County Defendants."

By order of August 29, 2002, the Court denied Plaintiffs' Motion for Preliminary Injunction because the specific relief sought in that proceeding, having not been officially denied, was not ripe as a matter of constitutional law. The present Order concerns arguments raised in the Maui County Defendants' separate Motion for Partial Dismissal. Although the relief sought in the preliminary injunction was not ripe, the legal issues dealt with in this Order are properly before the Court. The lawsuit itself presents legal questions such as immunity and the viability of causes of action related to the specific denial of the Special Use Permit sought by Plaintiffs. For the reasons set forth, the Court GRANTS Defendants' Motion in part and DENIES it in part.

## FACTUAL AND LEGAL BACKGROUND

### A.

Plaintiffs own a 5.85 acre parcel on Anuhea Place in the Pukalani area on the Island of Maui. The parcel is classified as agricultural by the State of Hawaii under the statewide land use classification scheme. *See generally* Haw.Rev.Stat. § 205–2, Districting and classification of lands. In turn, the parcel is zoned agricultural by Maui County.

Haw.Rev.Stat. § 205–4.5(a) delineates specific "permissible uses" within state agricultural districts. It specifies uses such as crop cultivation and fish propagation and various other related things like farm dwellings, riding stables, and wind energy facilities.[2] In effect, anything that is not specifically permitted is prohibited, absent

---

1. The Court previously dismissed State Defendants Benjamin Cayetano (in his official capacity as Hawaii's Governor) and Anthony Ching (in his official capacity as chairperson of the State Land Use Commission). The Court, however, refused to certify the dismissal as final under Fed.R.Civ.P. 54(d). Thus Hawaii, although not officially granted intervenor status under 28 U.S.C. § 2403, has continued to appear to present argument on the question of the constitutionality of state statutes.

Similarly, the United States has intervened pursuant to section 2403 to defend the constitutionality of RLUIPA.

2. Haw.Rev.Stat. § 205–4.5 provides in pertinent part, as follows:

Permissible uses within the agricultural districts.

(a) Within the agricultural district all lands with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B shall be restricted to the following permitted uses:

(1) Cultivation of crops, including but not limited to flowers, vegetables, foliage, fruits, forage, and timber;

(2) Game and fish propagation;

(3) Raising of livestock, including but not limited to poultry, bees, fish, or other animal or aquatic life that are propagated for economic or personal use;

(4) Farm dwellings, employee housing, farm buildings, or activity or uses related to farming and animal husbandry; Farm dwelling as used in this paragraph means a single-family dwelling located on and used in connection with a farm, including clus-

a special use permit. Section 205–4.5(b) states "uses not expressly permitted in subsection (a) shall be prohibited, except the uses permitted as provided in sections 205–6 and 205–8 [regarding nonconforming uses]." The state statutes do not specifically mention churches or religious uses.

In turn, section 205–6 deals with "special use permits."[3] The power to grant special use permits has been delegated by the State to the counties under Haw.Rev. Stat. § 205–6(a) ("The county planning commission may permit certain unusual and reasonable uses within agricultural . . . districts other than those for which the district is classified"), subject to approval by the state Land Use Commission *if* the land exceeds 15 acres. *See* Haw. Rev. Stat § 205–6(d).[4] (Similarly, the

---

3. Section 205–6 provides:

ters of single-family farm dwellings permitted within agricultural parks developed by the State, or where agricultural activity provides income to the family occupying the dwelling;

(5) Public institutions and buildings which are necessary for agricultural practices;

(6) Public and private open area types of recreational uses including day camps, picnic grounds, parks, and riding stables, but not including dragstrips, airports, drive-in theaters, golf courses, golf driving ranges, country clubs, and overnight camps;

(7) Public, private, and quasi-public utility lines and roadways, transformer stations, communications equipment buildings, solid waste transfer stations, major water storage tanks, and appurtenant small buildings such as booster pumping stations, but not including offices or yards for equipment, material, vehicle storage, repair or maintenance, or treatment plants, or corporation yards, or other like structures;

(8) Retention, restoration, rehabilitation, or improvement of buildings or sites of historic or scenic interest;

(9) Roadside stands for the sale of agricultural products grown on the premises;

(10) Buildings and uses, including but not limited to mills, storage, and processing facilities, maintenance facilities, and vehicle and equipment storage areas that are normally considered directly accessory to the above mentioned uses and are permitted under section 205–2(d);

(11) Agricultural parks; or

(12) Wind energy facilities, including the appurtenances associated with the production and transmission of wind generated energy; provided that such facilities and appurtenances are compatible with agriculture uses and cause minimal adverse impact on agricultural land.

§ 205–6 Special permit.

(a) The county planning commission may permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified. Any person who desires to use the person's land within an agricultural or rural district other than for an agricultural or rural use, as the case may be, may petition the planning commission of the county within which the person's land is located for permission to use the person's land in the manner desired. Each county may establish the appropriate fee for processing the special permit petition.

. . . .

(c) The county planning commission may under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter. A decision in favor of the applicant shall require a majority vote of the total membership of the county planning commission.

(d) Special permits for land the area of which is greater than fifteen acres shall be subject to approval by the land use commission. The land use commission may impose additional restrictions as may be necessary or appropriate in granting such approval, including the adherence to representations made by the applicant.

4. The Maui County Code has similar provisions for a "special use permit." *See* Maui County Code § 19.510.070 (regarding special permits) and § 19.30A.060. But, under those County provisions, for parcels of 15 acres or less, the "State special permit" (the discretion of which is delegated to the counties) suffices. The Maui County provision (Maui County Code § 19.30A.060(J)) lists "churches and religious institutions" as a "permitted use" if a

power to enforce restrictions on uses in agriculturally-classified lands has also been delegated to the counties. *See* Haw. Rev.Stat. § 205–12.) [5]

Under this statutory scheme, a special use permit may be granted for "certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified." Haw.Rev.Stat. § 205–6(a); *see also Maha'ulepu v. Land Use Com'n,* 71 Haw. 332, 790 P.2d 906, 909 (1990) (describing special use permit process). In turn, the Land Use Commission has promulgated Haw. Admin. Rule 15–15–95(b), which gives general guidelines for an "unusual and reasonable use" including "adversely affect[ing] surrounding property" and "unreasonably burden[ing] public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection." [6]

An administrative appeal to a state circuit court is allowed. If a county planning commission denies a special use permit, such denial "shall be appealable to the circuit court of the circuit in which the land is situated and shall be made pursuant to the Hawaii rules of civil procedure." Haw.Rev.Stat. § 205–6(e); *see also* Haw. Admin. R. § 15–15–96(c) (same).

In 1999, Plaintiffs applied to the Maui County Planning Commission for a special use permit both to expand their facility and to hold religious services. Specifically, the application to the Planning Commission was for a "Land Use Commission Special Use Permit application to use an existing structure and construct a second floor to hold church services." The proposal was to conduct church functions as well as to renovate an existing agricultural building, add a new gravel parking lot, add a new gravel driveway, and add a 30,000 gallon water tank as there is no county water service to the area. [County Exh. 131, Plaintiff's Application for a Land Use Commission Special Use Permit]. The County Planning Commission, after intervention by several interested parties, ap-

---

special use permit is obtained under Code § 19.510.070.

It is thus clear that the permit at issue here is a permit under Haw.Rev.Stat. § 205–6, not under Maui County Code § 19.30A.060(J). Thus, references to county regulations are irrelevant.

These details are also noted because, for purposes of Eleventh Amendment immunity, the County asserts that it was implementing *state* (not County) policy when it denied the permits. It claims it should therefore be entitled to corresponding Eleventh Amendment immunity.

**5.** Section 205–12 provides:

Enforcement.
The appropriate officer or agency charged with the administration of county zoning laws shall enforce within each county the use classification districts adopted by the land use commission and the restriction on use and the condition relating to agricultural districts under section 205–4.5 and shall report to the commission all violations.

**6.** Hawaii Administrative Rule § 15–15–95(b) provides:

(b) Certain "unusual and reasonable" uses within agricultural and rural districts other than those for which the district is classified may be permitted. The following guidelines are established in determining an "unusual and reasonable use":
(1) The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission;
(2) The desired use would not adversely affect surrounding property;
(3) The use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection;
(4) Unusual conditions, trends, and needs have arisen since the district boundaries and rules were established; and
(5) The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

pointed a hearing officer and eventually denied the permit.

The hearing officer, Judith Neustadter-Fuqua (a named Defendant), found that:

I. The use of the subject property sought by Applicant would adversely affect the properties of intervenors, properties along Anuhea Place, a private dead end street, by creating unacceptable levels of traffic and noise in the isolated agricultural neighborhood.

J. The use of the Subject Property sought by Applicant would burden Public agencies to provide water, police, and fire protection.

K. The land upon which the proposed use is sought is suitable for agriculture in view of the agricultural uses the intervenors have made of their properties, starting in 1976, for cattle, horses, and fruit trees. Further, the inspection of the property by the Hearing Officer and the parties revealed an agricultural use of the property by Applicant, which had a garden and potted plants in a hothouse.

The hearing officer concluded that "the use of the Subject Property sought by Applicant is not an 'unusual and reasonable' use within the State Agricultural District, the County Community Plan Agricultural District, and the County Agricultural Zoning District under the provisions of § 15–15–95(b) of the Rules of the Land Use Commission of the State of Hawaii." She therefore, on April 30, 2001, respectfully recommended "denial of Applicant's application for a special use permit for church use." Her findings and recommendation were adopted by the Maui Planning Commission per motion on June 27, 2001, and signed by all commissioners on August 14, 2001, "Filed and effective on: 8/20/01."

Plaintiffs had moved for the hearing officer's disqualification for bias because of certain statements attributed to her during a settlement conference, but she denied that motion without referring the matter to someone else. Section 12–201–54(b), which provides for the hearing officer's powers, appears to contemplate that such motions need not be reassigned. Plaintiffs' attorney protested the proceeding, objected to its continuation, refused to call any witnesses or to offer evidence other than that already stipulated or filed, and failed to submit proposed findings and conclusions in support of their position. Nevertheless, the record is sufficient for the Court to consider both parties' positions here.

After denial of the permit, Plaintiffs chose not to file an administrative appeal in state court under Haw.Rev.Stat. § 205–6(e) and Haw. Admin. R. § 15–15–96(c). Instead, they filed the present federal action. The County Defendants submitted a Motion for Partial Dismissal and the Plaintiffs filed a Motion for Preliminary Injunction. An evidentiary hearing on Plaintiffs' motion for preliminary injunction was conducted on July 24, 2002, and, as mentioned earlier, was denied by order of August 29, 2002. The Court took under submission the remaining issues regarding the Motion for Partial Dismissal.

### B.

Although the suit also involves more general constitutional civil rights claims (primarily freedom of religion), much has been made of RLUIPA—the Religious Land Use and Institutionalized Persons Act of 2000. RLUIPA provides in pertinent part:

§ 2000cc. Protection of land use as religious exercise.

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a man-

ner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

(2) Scope of application

This subsection applies in any case in which—

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

(b) Discrimination and exclusion

(1) Equal terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination

No government shall impose or implement a land use regulation that dis-

criminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits

No government shall impose or implement a land use regulation that—

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

Throughout this dispute, Plaintiffs have asserted that RLUIPA has been violated. Plaintiffs at times have taken the position that RLUIPA renders parts of Hawaii's land use classification scheme facially invalid. On the other hand, Defendants have challenged the constitutionality of RLUIPA. Arguments concerning the validity of Hawaii's land use law as well as RLUIPA were also heard on July 24, 2002.

The basic federal law regarding deprivation of civil rights is well-settled. "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials. To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002) (citation omitted). States have Eleventh Amendment immunity from suits for damages under section 1983. *See, e.g., Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). However, municipalities such as counties may be liable for constitutional violations under § 1983 if the deprivation occurred pursuant to a local policy, practice or custom.

*Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## DISCUSSION

### A. The Maui County ordinances are not at issue.

■ Initially, the Maui Defendants assert that Count XVI lacks merit. Count XVI is an alleged violation of Maui County Code ch. 19.30A. It asserts that the Maui Planning Commission failed to follow Maui County Code § 19.510.070. As set forth earlier, the Plaintiffs sought and the County applied Haw.Rev.Stat. §§ 205–4.5 and 6. County Code sections 19.30A and 19.510.070, although mentioning "special use permits," are not applicable. The permit sought and denied was a special use permit under state law (of which the discretion to grant or deny was delegated to the counties under § 205–6). Because the county codes were not applicable, they could not have been violated. Therefore, the Court agrees that Count XVI fails to state a claim. Count XVI of the Second Amended Complaint is DISMISSED.

### B. The Individual Defendants have quasi-judicial immunity.

■ The planning commissioners, as well as Hearing Officer Judith Neustadter–Fuqua, claim quasi-judicial immunity against section 1983 claims for damages against them in their individual capacities because the challenged conduct was decision-making in a quasi-judicial setting. *See, e.g., Buckles v. King Co.*, 191 F.3d 1127, 1134–36 (9th Cir.1999) (finding members of land use board entitled to absolute quasi-judicial immunity). The Court agrees.

■ *Buckles* sets out the principles of absolute quasi-judicial immunity from a suit for damages against government officials. The case reiterated that

[t]he doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges-that is, because they, too, "exercise a discretionary judgment" as part of their function.

191 F.3d at 1133–34 (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)). A non-exhaustive list of factors to determine whether a government official is performing duties "functionally comparable" to a judge are: "an adversarial proceeding, a decision-maker insulated from political influence, a decision based on evidence submitted by the parties, and a decision provided to the parties on all of the issues of fact and law." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

■ The Court applies a "functional approach" and looks at the function performed rather than simply looking at the identity of the actor. *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Applied here, the Court easily concludes that the Maui County Defendants (excluding Defendant John Min), in their individual personal capacities, are entitled to quasi-judicial immunity for their respective roles in the denial of the special use permit.

First, as in *Buckles*, 191 F.3d at 1134, the Maui County Planning Commission

(both the individual members and the hearings officer in conducting proceedings and making written recommended findings of fact and conclusions of law) was adjudicating a land use dispute and functioning as a quasi-judicial body. *See* Haw. Admin. R. § 15–13–34(a) ("The intent and purpose of chapter 205, HRS, is to establish quasi-judicial procedures which would ensure the effective application of established state land use policies through an adversarial process in a hearing in which diverse interests will have an opportunity to present their views in an open and orderly manner."). For example, at the beginning of the commission proceedings that reviewed the recommendations of the hearing officer, the County Planning Director John Min made clear that Haw.Rev.Stat. § 92.6(a)(2) (regarding sunshine laws and a commission performing an adjudicatory function) applied. [*See* County Defendants Exh. 106, Transcript of June 27, 2001, Maui Planning Commission meeting, at 4 ("...the Maui Planning Commission today will be exercising [its] adjudicatory function.") ].

Moreover, the functions performed by the individual defendants fulfill all the specific factors analyzed in *Buckles.* The proceedings were certainly adversarial (several intervenors had sought to deny the permit). The proceedings were considered a "contested case" for purposes of Hawaii administrative law. A whole host of quasi-judicial procedures applied or are illustrative of the procedures involved. *See* Haw. Admin. R. §§ 15–15–34 to 45 and 15–15–53 to 75;[7] and Maui County Code §§ 12–201–53 to 70 (setting forth applicable pre-hearing and hearing procedures regarding notice, testimony, cross-examination of witnesses, subpoenas, motions, discovery, mediation, evidence, etc.)[ ]. The hearing officer issued detailed written recommendations for findings and conclusions. Process was allowed for written and oral objections to such findings and conclusions. There was a right of judicial review to a state circuit court and beyond that to Hawaii's appellate court system. *See* Haw.Rev.Stat. § 205–6(e).

Granting quasi-judicial immunity to the individual Defendants here also serves the primary goal as stated in *Buckles*—prevention of impairing an "independent and impartial exercise of judgment." *Buckles,* 191 F.3d at 1133. Indeed, counsel for the Planning Commission recommended to the Commissioners that they not be influenced by the possibility of personal liability.[8]

In all respects, the individual Defendants functioned in a quasi-judicial capacity and are entitled to such immunity from claims for damages. The Court also finds no merit to Plaintiffs' claims of a due process violation merely because of the alleged comments made by the officer in the context of the settlement conference she conducted. The Court therefore

---

**7.** Many of those provisions apply to district boundary amendments, not necessarily to special permit proceedings. Nevertheless, they illustrate the same process as was given in the special permit proceedings at issue here.

**8.** At the Planning Commission meeting of June 27, 2001, Deputy Corporation Counsel Brian Moto told the commissioners, among other things:

> Now, I also want to address something that may have troubled one or more of you during the arguments. You've heard ref-

erences from counsel for the applicant regarding damages and personal liability. I would like to recommend to you that you not be swayed by such considerations; but that you base your decision on the facts that are in the record and which were presented to the hearings officer and that you apply the criteria that is set forth in state law in order to reach your decision.

[Defendants' Exh. 106, Transcript of hearing at 67].

GRANTS the Maui County Defendants' Motion for Partial Dismissal as to the individual-capacity claims.

■ This immunity applies to the section 1983 claims. Individual immunity is not necessary for the RLUIPA claims. RLUIPA provides a cause of action against "governments" and does not appear to allow causes of action against individuals. (A section 1983 claim against an individual could be based upon a denial of such a *statutory* right (*see Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)), but such a claim would be a section 1983 claim, not an individual RLUIPA claim.) In any event, to the extent Plaintiffs assert or can assert a claim against individual defendants in their personal capacities specifically under RLUIPA, the Court would find the same immunity and such claims are dismissed. *See Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir.1999) (recognizing that absolute immunity is immunity from charges of either constitutional or statutory violations) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

For similar reasons, the Court agrees that the individual Maui County Defendants are entitled to such individual immunity under state law for state claims. *See Hulsman v. Hemmeter Develop. Corp.*, 65 Haw. 58, 647 P.2d 713 (1982).[9]

**C. *Defendant John Min is entitled to qualified immunity.***

■ Defendant John Min, the Director of the Maui County Planning Commission, has also been sued in his individual capacity. Plaintiffs claim that Min is potentially personally liable for constitutional violations under a theory of supervisory liability. The Court disagrees.

■ For a section 1983 claim to stand against Min, Plaintiffs must demonstrate that the contours of the rights at issue here (constitutional and RLUIPA-derived) were sufficiently clear that a reasonable official would understand that what he was doing violates those rights. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The question is "whether it would be clear to a reasonable [planning director] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

■ Applied here, the Court has little difficulty concluding that Min is entitled to qualified immunity. Plaintiffs argue that Min made a determination to enforce a land use law that he knew or should have known would inflict constitutional injury. But, as Maui County responds, the contours of Plaintiffs' statutory rights under RLUIPA—a statute enacted during the pendency of the special use permit application—were (and are) anything but clear. The contours of the constitutional rights to the free exercise of religion, arguably,

---

9. Given the finding of absolute quasi-judicial immunity, the Court need not reach whether those individual defendants would be entitled to qualified immunity. Nevertheless, given the present uncertainty regarding the standard with which a commission reviews such an application (and of the viability and parameters of RLUIPA), the Court would also grant qualified immunity to the individual defendants (including the hearing officer Fuqua). *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

were more defined but certainly not of sufficient clarity to render Min's actions culpable in any respect. A planner is no doubt aware that "[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities," *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), but on the other hand—especially with questions regarding the free exercise of religion—is presented with "fluid precedent." *Messiah Baptist Church v. County of Jefferson*, 859 F.2d 820, 824 (10th Cir.1988). "As the Eleventh Circuit observed, '[i]nterpretation and application of the free exercise clause has created, within that field of constitutional doctrine, areas dotted by unanswered questions.'" *Id.* (quoting *Grosz v. City of Miami Beach, Fla.*, 721 F.2d 729, 733 (11th Cir.1983)).

Every indication is that Min was simply applying the provisions of duly-enacted and facially-constitutional state laws. Min is entitled to qualified immunity. The Court GRANTS the Maui County Defendants' Motion in this regard.

D. *Maui County does not have Eleventh Amendment immunity.*

■ Generally, "the Eleventh Amendment does not extend to counties and municipal corporations." *Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir.2002) (citations omitted) (finding Clark County School District in Nevada is not entitled to Eleventh Amendment immunity). Nevertheless, Maui County[10] asserts

that it is entitled to Eleventh Amendment immunity because it is implementing state—not County—policy when it denied the special use permit under state law. Similarly, the County appears to assert that it is not a "person" for purposes of the *Monell* claim (claim against municipality for violations of "official municipal policy"). *See, e.g., Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999) ("Congress intended to hold municipalities liable [under section 1983] only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'").

■ There is little question that the County Planning Commission was acting as a "final policymaking authority" so as to render the County potentially liable for civil rights violations as a "person" for purposes of a *Monell* claim. There is also no question that the County, as a government body acting through its "policy making authority" was acting "under color of state law" for purposes of a section 1983 claim. The real question here, however, is whether the County Planning Commission, when it adjudicates a special use permit of less than 15 acres under state law, is an "arm of the state" entitled to Eleventh Amendment immunity. *See, e.g., Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The Court finds that Maui County was not an "arm of the state." Merely because the County is applying state law does not automatically grant it state immunity. The County—not the State—has complete discretion (for small agricultural lots) to

---

10. "Maui County" includes Defendants Maui County, the Maui County Planning Commission, James Apana (Maui Mayor in his official capacity) and other Defendants in their official capacities. *See, e.g., Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) ("It has long been settled that the reference to actions 'against one of the United States' [in the Eleventh Amendment] encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agencies and state instrumentalities"). It is thus true, as the County argues, that there is no need for Plaintiffs to name county officials in their official capacities in this suit.

grant or deny the permit. The County—not the State—has enforcement powers. The discretionary decision to deny the permit is County policy. *See, e.g., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) ("the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.' ") (citation omitted).

■ The Ninth Circuit applies a five-factor test to decide whether an agency is an arm of the state: "(1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity." *Eason*, 303 F.3d at 1141 (quoting *Mitchell v. Los Angeles*, 861 F.2d 198, 201 (9th Cir.1989)).

Applying these five *"Mitchell* factors," all weigh in favor of finding no Eleventh Amendment immunity for the County. The State of Hawaii has delegated its discretionary power to grant or deny special use permits for small lots. Nothing, however, indicates it will pay or indemnify for money judgments against counties for damages for the counties' unconstitutional exercise of such discretion. The government function at issue is a County function, even if done pursuant to the State Land Use Law. No one disputes that generally the County can sue and be sued. It certainly has the power to take property in its own name. And its "corporate status" is a traditional municipality, which normally is not entitled to Eleventh Amendment immunity. The Court thus denies Maui County's Motion to the extent it seeks Eleventh Amendment immunity.

E. *RLUIPA did not facially invalidate any provision of Hawaii's Land Use Law, Haw.Rev.Stat. ch. 205.*

Plaintiffs claim that RLUIPA renders parts of Hawaii's Land Use Law (Haw. Rev.Stat. ch. 205) facially invalid. Specifically, they challenge Haw.Rev.Stat. §§ 205–4.5 and 205–6, to the extent the sections require a religious organization to obtain a special use permit, as violations of the "equal terms" and "nondiscrimination" provisions of RLUIPA.

The "equal terms" provision states:

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

42 U.S.C. § 2000cc(b)(1).

The "nondiscrimination" provision states:

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

42 U.S.C. § 2000cc(b)(2).

Plaintiffs argue that Hawaii's land use law violates these provisions because religious institutions—even if they are not specifically mentioned in the state law—are treated on less than equal terms just by having to obtain a special use permit. *See* Plaintiffs' Memorandum in Support of Preliminary Injunction at 43–44; Plaintiffs' Reply Memorandum at 27. They argue that state standards

treat religious assemblies and institutions (none of which are permitted uses) differently and worse than nonreligious ones (some of which are permitted uses). This, by itself, is enough to establish an equal terms violation[.]

Reply at 27. *See also id.* at 31 ("government's requiring, on the face of the stat-

ute..., religious activities to apply for a special permit when the same or similar nonreligious activities were not so required represents regulation of conduct [in violation of RLUIPA].").

■ Initially, the Court finds that Haw.Rev.Stat. §§ 205–4.5 and 205–6 are "land use regulations" for purposes of RLUIPA. RLUIPA defines "land use regulation" as follows:

The term "land use regulation" means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc–5(5). Maui County contends that because state law—the state land use classification system—is at issue (not County zoning codes per se), a "land use regulation" is not involved. It emphasizes that only the County "zones" land and point to the word "zoning" in section 2000cc–5(5).

The Court disagrees. Hawaii's Land Use Law can certainly be considered "zoning" on a statewide level. See generally Fred P. Bosselman & David L. Callies, The Quiet Revolution in Land Use Controls (1971) (describing role of states (including Hawaii) in "taking back" some traditional police powers delegated to counties regarding control of land use). Hawaii's Land Use Law certainly "limits or restricts a claimant's use or development of land (including a structure affixed to land)" as described in section 2000cc–5(5). Nothing indicates that Congress intended RLUIPA to apply only to local, county, or municipal zoning laws. Merely

because Hawaii, like several other states, has a larger system of statewide land use controls, does not exempt those controls from RLUIPA's definition of a "land use regulation."

■ Nevertheless, assuming for the moment that RLUIPA is itself constitutional, the Court rejects Plaintiffs' argument that RLUIPA rendered Hawaii law facially unconstitutional or statutorily infirm. That is, RLUIPA did not facially invalidate any section of Hawaii's Land Use Law, Haw.Rev.Stat. ch. 205.

To start, Plaintiffs' argument—that merely having to obtain a permit is a violation of federal law—is inconsistent with its other assertions that it is not seeking such an exemption. See Transcript of July 24, 2002, at 134–35 (Mr. Storzer: "My clients [Plaintiffs] have engaged—have followed the county and state laws throughout the whole process. They've never requested to be exempt from these laws."); Id. at 60 (Mr. Jenkins: "We stated repeatedly, we'll do anything required by the county in order to be able to pray and worship on our property.").

More importantly, the state statutory provisions do not facially discriminate against religious institutions. Merely classifying land into agricultural, rural, urban, and conservation districts does not discriminate against church buildings or uses. More specifically, Haw.Rev.Stat. §§ 205–2(d) and 4.5 detail permitted "agricultural" uses in agricultural districts—hardly surprising for an "agricultural" district. Those uses (such as cultivation of crops and livestock, see § 205–4.5(a)(1) & (3), or open area recreational uses not including things like dragstrips and golf courses, see § 205–4.5(6)) can fairly be thought of as "agricultural." The law does not mention churches at all.[11] The law is facially neu-

---

11. Indeed, if it specifically *permitted* any and all religious institutions and structures, we might be here discussing the establishment clause and not the free exercise clause.

tral and of general applicability (although it does include a system of "individualized assessments"). Plaintiffs are treated as equally as any other non-agricultural users or uses. They are not treated "on less than equal terms with a nonreligious assembly or institution." To rule otherwise would exempt religious institutions from all zoning laws and this, according to RLUIPA's legislative history, clearly was not the intent of RLUIPA. *See* 146 Cong. Rec. S7774–01, at S7775 ("The General Rule does not exempt religious uses from land use regulation; rather it requires regulators to more fully justify substantial burdens on religious exercise"); *id.* at S7776 ("This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay"); *San Jose Christian College v. City of Morgan Hill,* 2002 WL 971779 at *2 (N.D.Cal. Mar.5, 2002). Compliance with the law itself does not present a substantial burden on practice of religion. As the U.S. Supreme Court has reiterated, "[t]o permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Employment Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (quoting *Reynolds v. United States,* 98 U.S. 145, 166–67, 25 L.Ed. 244 (1879)).

A permit is required, just as any other non-agricultural use requires a permit. Plaintiffs, in this respect, should be compared not to uses as specified in § 205–4.5 (which, again, are fairly thought of as "agricultural"), but to any other non-agricultural uses that might be sought by special use permit. Plaintiffs' facility expansion and proposed regular use requires a per-

mit (1) just as a golf course on prime land requires (at least) such a permit, *see Maha'ulepu v. Land Use Com'n,* 71 Haw. 332, 790 P.2d 906 (1990) (upholding granting of special use permit for golf course in "A" and "B" rated agricultural lands), or (2) just as a U.S. Cellular company telecommunications antenna requires such a permit, *see Curtis v. Board of Appeals,* 90 Hawai'i 384, 978 P.2d 822 (1999) (determining that U.S. Cellular must obtain a special use permit to erect a cellular telephone tower in agricultural district), or (3) just as a theme park developer might apply for such a permit, *see Neighborhood Bd. No. 24 (Waianae Coast) v. State Land Use Comm'n,* 64 Haw. 265, 639 P.2d 1097 (1982) (reversing grant of special use permit to construct a 103 acre theme park on agricultural land).

In sum, the Court finds that RLUIPA, assuming it is constitutional, did not facially invalidate Hawaii's land use classification scheme. This is, of course, not to say that the laws cannot be *applied* unconstitutionally. This brings up the question as to which test (i.e., rational basis or strict scrutiny) applies to such an "as-applied" challenge.

F. *Because the Court reviews the Planning Commission's actions under a strict scrutiny standard of review, the question of RLUIPA's constitutionality here is moot.*

 Maui County has challenged the constitutionality of RLUIPA. Among other things, it asserts that RLUIPA is invalid as an improper assertion of power under the Commerce Clause of the U.S. Constitution. The County asserts that RLUIPA is unconstitutional under the Commerce Clause because it does not require the "effect" on commerce to be "substantial." Under *United States v. Lopez,* 514 U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626

(1995) (striking down on commerce clause grounds the Gun–Free School Zones Act of 1990), the Supreme Court indicated that "consistent with the great weight of our case law, ... the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce.".

*Lopez* does not, however, render RLUIPA facially unconstitutional under the Commerce Clause. *Lopez* itself recognized that if a statute includes a jurisdictional element, the statute avoids such a jurisdictional challenge. 514 U.S. at 558–59, 115 S.Ct. 1624. RLUIPA contains such an element. It applies, among other reasons, where "the substantial burden [on the free exercise of religion] affects, or would affect ... commerce." 42 U.S.C. § 2000cc(a)(2)(B). In any event, this limitation (only "substantial" effects on commerce) really only applies to laws of general applicability where Congress regulates an entire field of activity. *See United States v. Harrington*, 108 F.3d 1460, 1465 (D.C.Cir.1997) ("a jurisdictional element could 'ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce'") (quoting *Lopez*).[12]

■ Further, subsection (c) [13] provides an independent basis of jurisdiction. Section (c) codifies the "individualized assessments" doctrine, where strict scrutiny applies. *See Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 537, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) ("In circumstances in which individualized exemptions from a general requirement are available, the government 'may not

refuse' to extend that system to cases of 'religious hardship' without compelling reason.") (quoting *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 884, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). *See also Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136, 141–42, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) (applying strict scrutiny to a state commission's denial of employment benefits to a religious applicant).

Beyond this, however, the Court need not reach other more difficult questions regarding RLUIPA's constitutionality. This is because the Court finds that Maui County's actions in denying the special use permit must be viewed under a lens of "strict scrutiny" *regardless* of RLUIPA.

■ After its decision in *Smith*, the U.S. Supreme Court confirmed the general idea that laws that are "neutral" and of "general applicability" are valid if supported by a rational basis, even if they create "incidental burdens" on the free exercise of religion. *Hialeah*, 508 U.S. at 531, 113 S.Ct. 2217. "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533, 113 S.Ct. 2217 (citing *Smith*, 494 U.S. at 878–79, 110 S.Ct. 1595).

As set forth earlier in this order, the state laws at issue here (Haw.Rev.Stat. §§ 205–4.5 and 205–6) are neutral. The overarching object of the laws is to "protect and conserve natural resources and foster intelligent, effective, and orderly

---

12. *See also* 42 U.S.C. § 2000cc–1(g) (implementing "aggregate effects" test for determining a substantial burden on commerce).

13. Strict scrutiny applies where
 (C) the substantial burden is imposed in the implementation of a land use regulation or

system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

land allocation and development." *Curtis,* 978 P.2d at 834 (internal quotation marks omitted) (citing legislative history). And nothing indicates that the objective of the law generally, or of special use permits on agricultural lands in particular, was to "infringe upon or restrict practices because of their religious motivation." *Hialeah,* 508 U.S. at 533, 113 S.Ct. 2217.

However, the Supreme Court also confirmed that "where the State has in place a system of individualized exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Smith,* 494 U.S. at 884, 110 S.Ct. 1595. *See also Hialeah,* 508 U.S. at 537, 113 S.Ct. 2217 ("in circumstances in which individualized exemptions from a general requirement are available, the government [must demonstrate a compelling interest]").

 It is also apparent, then, that (1) Haw.Rev.Stat. § 205–6, which provides for special use permits for "unusual and reasonable" uses, and (2) Haw. Admin. R. § 15–15–95(b), which defines "unusual and reasonable," allow for exemptions from the permitted uses in Haw.Rev.Stat. § 205–4.5 on an individualized basis. The provisions are a system of "individualized exemptions" to which strict scrutiny applies. *Smith,* 494 U.S. at 884, 110 S.Ct. 1595; *Hialeah,* 508 U.S. at 537, 113 S.Ct. 2217 Maui County may not deny a special use permit to Plaintiffs to operate a church if doing so imposes a "substantial burden" on Plaintiffs' free exercise of religion, unless the County demonstrates a compelling interest and denying the permit would be the least restrictive means of reaching that goal.

Regardless of RLUIPA, then, the substantive test before the Court is strict scrutiny. Has the County's denial of the special use permit "substantially burdened" Plaintiffs' free exercise of religion? If so, has the County demonstrated a "compelling" interest and that the denial is the "least restrictive means" for meeting that interest?

Questions of RLUIPA's constitutionality are therefore moot.[14] Plaintiffs and the United States have argued that all Congress did with RLUIPA was to codify existing Supreme Court precedent. However, even if the Court applies strict scrutiny here, it does not necessarily mean that Congress did not go too far in codifying strict scrutiny for *all* zoning or land use laws, or in codifying an interpretation and *extension* of the "individual assessments" doctrine (i.e., extending the doctrine from an unemployment benefits context as in *Smith* to all zoning contexts). The question might then arise as to whether Congress acted with "congruence and proportionality" when it enacted RLUIPA and extended the doctrine. *See City of Boerne v. Flores,* 521 U.S. 507, 518, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (reasoning, when discussing Congressional power under section 5 of the Fourteenth Amendment, that "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Lacking such a connection, legislation may become [impermissibly] substantive in operation and effect.").

This Court need not reach those questions because the Court has concluded that Hawaii's land use special permit scheme (as opposed to other, perhaps more general, land use or zoning codes) requires a strict scrutiny analysis for religious institutions. *Cf. Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 953

---

14. The statute does not appear to provide any additional remedies not already available generally under section 1983.

P.2d 1315, 1344–45 & n. 31 (1998) (applying strict scrutiny analysis to a Honolulu zoning ordinance and finding a height restriction to be of no substantial burden on church).

Nevertheless, it is premature to apply the strict scrutiny test to the record before the Court. As set forth in the Court's order of August 29, 2002, it is not clear that the County has prohibited Plaintiffs from conducting all religious activity on their property in Pukalani. There has never been a permit application simply to hold church services on the property. The permit at issue was sought to expand existing structures and to use the structures as a church. The record contains no specifics regarding such details of hypothetical uses (e.g., frequency and times of gatherings, limitations on numbers of worshipers, etc.) where the County might have religiously-neutral compelling needs to protect health and safety by restricting access to or capacity of an assembly. A periodic gathering limited to 60 people would presumably present different burdens on County services than, say, frequent gatherings of several hundreds or thousands of people. Even a periodic prayer circle might be evaluated differently if it were the size of Woodstock.

Further, this Court notes that even if it does eventually find that Maui County's denial created a substantial burden and the County had not proven a compelling interest or regulation by the least restrictive means, the Court cannot grant a special use permit to the Plaintiffs. A state court could apparently do so if a constitutional violation is found. *See* Haw.Rev. Stat. § 91–14(g). But Plaintiffs chose not to file an administrative appeal. All this federal Court could do is find a constitutional violation. The Court cannot act as the Maui Planning Commission.

In this regard, the Maui Planning Commission never addressed, nor considered, whether the burden on Plaintiffs would be substantial nor whether a flat denial of a permit would be the least restrictive means of meeting a compelling interest. One question would be whether the Maui Planning Commission should or could itself make those factually-specific constitutional considerations in the first instance in assessing whether to grant (with or without conditions) or to deny such special use permits to religious institutions. Arguably, this might be what Congress had in mind when passing RLUIPA. *See* 146 Cong. Rec. at S7775 ("[RLUIPA] requires regulators to more fully justify substantial burdens on religious exercise").

Maui County has cited cases such as *HOH Corp. v. Motor Vehicle Industry Licensing Bd.,* 69 Haw. 135, 736 P.2d 1271, 1275 (1987), indicating that administrative agencies are not empowered to adjudicate constitutionality of statutes. Even so, this does not necessarily preclude an administrative agency from considering constitutional *rights* in exercising its discretion. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) ("even if [state] law is such that the Commission may not consider the constitutionality of the statute under which it operates, it would seem an unusual doctrine ... to say that the Commission could not construe its own statutory mandate in the light of federal constitutional principles."); *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.,* 683 F.2d 1229, 1234 (9th Cir.1982) ("[California law] merely places restraints on administrative agencies relative to their refusal to enforce statutes on constitutional grounds; it does not affect their enforcement of their own rules or their competence to examine evidence before them in light of constitutional standards.") (internal quotation marks and citations omitted).

The Maui Planning Commission would not be tasked with determining whether RLUIPA is facially unconstitutional, nor with whether RLUIPA rendered any provision of Hawaii law facially void.

In any event, an application of the strict scrutiny analysis, will await further proceedings in this case.

## CONCLUSION

For the foregoing reasons, the Court (1) dismisses Count XVI; (2) dismisses claims against the individual defendants because of quasi-judicial and qualified immunity; (3) declines to grant Eleventh Amendment immunity to Maui County; (4) finds that RLUIPA did not facially invalidate Hawaii's Land Use Law, Haw.Rev.Stat. ch. 205; and (5) declares that a strict scrutiny test will apply in assessing Maui County's past actions in further proceedings in this case.

IT IS SO ORDERED.